[No. H005512. Sixth Dist. May 9, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ISMAEL MARTINEZ GONZALES, Defendant and Appellant.

COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and William T. Lowe, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Joanne S. Abelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—Ismael Martinez Gonzales appeals from the imposition of two consecutive five-year prison terms for two prior residential burglary convictions to run consecutively to a six-year term for residential burglary. He contends the two convictions should constitute only one prior since he pled guilty to both charges at one proceeding.

We affirm.

### FACTS

Appellant was found guilty of residential burglary (Pen. Code, §§ 459, 460, subd. 1) at jury trial in December 1988.[1] Thereafter, he waived jury trial on allegations that he had suffered two prior residential burglary convictions in 1984 (§§ 667, 1192.7), and the court found them to be true. The court denied appellant's motion to strike one prior on the ground that although the charges were alleged under two separate case numbers when he pled guilty to them, he believed that they "would be run together," and that he would not receive separate sentences. Appellant asserted an alternative ground that if the court considered that the two cases were tried separately due to the lack of a formal consolidation at the time he entered his guilty pleas, then appellant's trial counsel had been ineffective for failing to file a motion for consolidation.

### CONTENTIONS ON APPEAL

Appellant raises the same contentions on appeal. He asserts that there was a "de facto" consolidation of the two 1984 cases when he pled guilty to

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

them. He bases this belief on the plea negotiations, on an ambiguity in the advisement of the future consequences of the pleas, and the silence of the prosecution after that advisement.

Appellant testified at the hearing on his motion: "[T]hey told me if I cop to the deal they're going to give me, they were going to run them together regardless if [*sic*] I did cop to the two of them, they told me they were going to run them together, put them together as one. That is why I cop to a deal." Appellant also understood that he would receive the three-year and four-month sentence on a "package deal."

Second, appellant asserts that the advisement of the consequences of the pleas created an ambiguity which should be resolved in his favor. The court advised: "The two offenses for which you are being convicted are serious felonies. Hereafter, if you are convicted of any serious felony comma [*sic*] these convictions will be used to enhance any subsequent sentence by five additional years in prison."

Appellant asserts that the reference to "two offenses" but only "five years," indicates that the court which accepted his pleas believed that the two charges were being tried together for purposes of section 667. He finds additional support for this proposition because "[t]o this statement, the prosecution made no objection, and stated no disagreement, demonstrating the prosecution's belief that the two charges were being tried together for purposes of section 667."

Finally, appellant contends that "[t]he certifications in both cases refer to the joint sentence of three years, four months, without differentiating between the two cases." To respond briefly to this point, although appellant correctly quotes the separately numbered certifications attached to the separate waiver-of-rights forms, the certifications are not the record of judgment imposed in superior court.

That record, the abstract of judgment, bears separate case numbers for each charge, and indicates separate consecutive sentences (albeit totalling three years and four months). Furthermore, the abstract shows that presentence time credits were awarded in one case, and none in the other. (See § 2900.5.) Had the court considered the cases consolidated, the apportionment of time credits to one case and not the other would have been unnecessary. Additionally, the court ordered a restitution fine "in each case."

## DISCUSSION

### *"Brought and Tried Separately"*

 Section 667, subdivision (a), provides for a five-year enhancement to the sentence of "any person convicted of a serious felony who previously has been convicted for a serious felony . . . for each such prior conviction on charges brought and tried separately."

In *In re Harris* (1989) 49 Cal.3d 131, 135 [260 Cal.Rptr. 288, 775 P.2d 1057], the Supreme Court held that "it is the formal distinctiveness of the prior proceedings that is the predicate for separate enhancements. The implication becomes clearer still when section 667 is compared with other habitual-criminal provisions, such as sections 667.5, 667.6, and 667.7, whose operation depends solely on the existence of prior convictions and prison terms."

In holding that section 667's phrase "on charges brought and tried separately" carries the same meaning as the virtually identical phrase in former habitual-criminal statute section 664, the court concluded that "the requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris, supra*, 49 Cal.3d at p. 136.)

An earlier Supreme Court construed the phrase to signify that the prior felony proceedings had to be totally separate, not only during proceedings before trial, but also as to those leading to the ultimate adjudication of guilt. (*People* v. *Ebner* (1966) 64 Cal.2d 297, 304 [49 Cal.Rptr. 690, 411 P.2d 578].) "There is 'no distinction between an adjudication of guilt based on a plea of guilt and that predicated on a trial on the merits.' [Citations.]" (*In re Harris, supra*, 49 Cal.3d at p. 135.)

In *Harris,* the defendant's two prior robbery convictions arose from a single proceeding which was initiated through the filing of a single complaint in municipal court and was followed by a single preliminary hearing in the same court. The original proceeding was thereafter prosecuted in the superior court under two informations. The Supreme Court determined that the charges had not been brought separately, and that Harris was subject to one 5-year enhancement, not two.

Appellant urges the same result upon us, asserting that although his charges were brought separately, they were not tried separately. The district attorney filed separate residential burglary charges against appellant in the

Santa Clara County Municipal Court under different case numbers. The burglaries took place at different locations in San Jose on dates a little more than a month and a half apart. The first complaint was filed almost a month before the second burglary occurred.

Not unnaturally, the parties arrived at a plea bargain: "the disposition is in *each* case the Defendant will plead as charged. This will be conditioned upon no more than three years four months in prison." (Italics added.) The court separately stated the accusations brought by each complaint, and specified each case separately in asking appellant for his plea. Furthermore, the court consistently referred to "these offenses" during the proceeding. However, there was one advisement of rights, in which the court variously referred to "your plea" and "your pleas."

The record is unclear, but apparently appellant had originally been represented by the public defender in one of the cases. At the beginning of the taking of the plea, a conflict was declared, and the attorney on the second case was appointed to represent appellant on both. Appellant signed a separate waiver-of-rights form for each case. The court accepted "your plea" "in each case," and referred "your two cases" to the probation department for a presentence report. The cases were certified to the Santa Clara County Superior Court under different case numbers. There is nothing in the change of plea transcript to indicate that a motion for consolidation was made. The judgment, as stated above, maintained separate case numbers, imposed separate sentences and awarded time credits separately.

The trial court in the subsequent case heard appellant's testimony as to his understanding of the plea bargain in 1984 and its consequences and looked at the prior court files and records of the convictions. The court found that the priors were brought and tried separately.

For the proposition that his charges were not *tried* separately, appellant relies on *People* v. *Deay* (1987) 194 Cal.App.3d 280, 286 [239 Cal.Rptr. 406]. There, the disputed prior convictions arose when, in one proceeding, defendant pled guilty in the Redding Municipal Court to two counts of first degree burglary under one case number. That case was certified to the Shasta County Superior Court, which, in one proceeding, entered judgment on both pleas. In the subsequent case, the trial court found true both section 667 allegations and imposed two consecutive five-year enhancements. The Court of Appeal agreed with the defendant that one of the enhancements had to be vacated because the two prior convictions were not on charges brought and tried separately.

The court observed: "[A]s to both priors, defendant here pled guilty, i.e., was 'tried,' under one case number. This, however, is not dispositive of our

conclusion that defendant was not tried separately for his prior convictions. Although we agree that separate case numbers may be evidence that multiple priors were brought separately, *we reject any suggestion that, despite the fact the defendant pled guilty to both priors at the same time they may be deemed to have been tried separately simply because of the fortuity of their bearing different case numbers.* In our view, and consistent with its purpose, section 667 contemplates temporal rather than administrative separateness. The random assignment of case numbers is not only inconclusive of a defendant's having been tried separately within the meaning of section 667; to measure separateness in this manner also opens a door to prosecutorial abuse of the process." (*People v. Deay, supra,* 194 Cal.App.3d at p. 290, fn. 6, italics added.)

Was appellant tried separately? *Harris* requires "formally distinct criminal proceedings." *Deay* suggests temporal separateness. We have considered the totality of the circumstances surrounding the progress of appellant's cases, and find that the charges were tried separately.

Unlike *Harris* and *Deay*, appellant's priors originated in separate charging documents. The charges were unrelated; the incidents occurred at different times and places. (See *People v. Lewis* (1987) 191 Cal.App.3d 1288, 1301 [237 Cal.Rptr. 64].) As previously noted, appellant committed the second burglary well after the complaint for the first burglary was filed and on its way through the system. The second complaint was filed the day after the second burglary. Unlike *Harris,* the prosecution did not start with one charging document in municipal court and emerge with two informations in superior court. Thus, no taint of "prosecutorial abuse of the process" arises from the filing of the separate complaints.

Furthermore, although the guilty pleas and the imposition of sentence were contemporaneous, we do not believe that temporal togetherness alone is sufficient to defeat the demonstrated intention of the parties and the court. The fact that both cases were called for hearing in municipal court on the same day is not evidence of a motion or grant of consolidation. Rather, it is a product of the practical realities of an overburdened criminal court system.

First, defendants usually want, and defense counsel have an obligation to attempt, the most beneficial plea bargain that can be negotiated. (*People v. Brown* (1986) 177 Cal.App.3d 537, 548-550 [223 Cal.Rptr. 66].) Frequently this involves resolution of all of the known pending cases against a defendant.

It would neither benefit the public nor a defendant to require hearings on separate days for each case involved so as not to effect a "de facto" consoli-

dation of cases. On the contrary, the public would be justly incensed by an increased number of criminal cases clogging court calendars while civil cases languish unheard; by the uncertain status of victims, waiting longer to be called or released as witnesses; by the expense of additional court personnel, courtrooms, deputy district attorneys and defense counsel to handle repetitious, but "temporally separate," hearings; by an increase in the expense of housing prisoners in the county jail until resolution of their cases; and by a sheriff diverting his resources to the repeated transport of prisoners.

Nor would a repeat "serious felony" offender benefit by procedural foot-dragging. Speaking generally about a very complicated area, a county jail inmate headed for state prison will serve a longer sentence the longer he waits in the county jail. The Penal Code grants fewer days of "good behavior" and "work time" credits to county jail inmates than to state prison inmates. (See §§ 4019, 2933 & annots.; *People* v. *Ross* (1985) 165 Cal.App.3d 368, 377 [211 Cal.Rptr. 595]; *In re Joyner* (1989) 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967].) Furthermore, county jail inmates do not have access to the types of programs and facilities available in state prisons. Since the faster a prisoner gets "programmed," the faster he starts earning increased time credits, it is to his benefit to expeditiously resolve cases.

We look also to expressions of public policy. The Legislature and the voters have shown plainly what they want from the criminal justice system. The Legislature has declared that the purpose of imprisonment for crime is punishment. (§ 1170.) Rule 410 of the California Rules of Court expresses seven different objectives of sentencing, among them protecting society and deterring others from criminal conduct by demonstrating its consequences. (*People* v. *Levingston* (1982) 136 Cal.App.3d 724, 730 [186 Cal.Rptr. 417].) ■ Increased penalties for recidivists exist because " 'an offender undeterred by his *prior brushes with the law* deserves more severe criminal treatment. [Citation.]' [Citation.]" (*People* v. *Rojas* (1988) 206 Cal.App.3d 795, 798 [253 Cal.Rptr. 786].) " ' "[T]he reason . . . is not so much that defendant has sinned more than once as that he is deemed incorrigible when he persists in violations of the law after conviction of previous infractions." ' " (*Id.* at p. 799, italics omitted.)

In addition, the voters restricted the discretion of the district attorney to resolve cases by adopting Proposition 8 in the June 1982 Primary Election. The restrictions limited plea bargaining in cases involving any of 25 listed offenses or categories of offense. (§ 1192.7.) ■ Furthermore, section 1192.6 had been added by statute in 1981 to require a statement of reasons on the record for a reduction or dismissal of any felony offense and a statement of the prosecutor's reasons for agreeing to a plea which specifies

the punishment to be imposed. (*People* v. *Brown, supra,* 177 Cal.App.3d at p. 547, fn. 10.) The provisions of section 1192.6 are mandatory, "to prevent the prosecutorial abuse of the plea bargaining procedure, i.e., plea bargains which are *too lenient.*" (*People* v. *Cardoza* (1984) 161 Cal.App.3d 40, 45, fn. 4 [207 Cal.Rptr. 388].)

Finally, the Legislature rebuffed an attempt to avoid its mandate for enhanced sentences for repeat serious felony offenders in May 1986. It enacted subdivision (b) of section 1385 "to abrogate the holding in People v. Fritz, [(1985)] 40 Cal.3d 227, and to restrict the authority of the trial court to strike prior convictions of serious felonies when imposing an enhancement under Section 667 of the Penal Code." (Stats. 1986, ch. 85, § 3, pp. 211-212.)

Such was the climate when appellant's subsequent case was brought and tried, and his prior convictions were found true.

■■ Appellant now urges us to find a "de facto" consolidation. This we decline to do.

First, the record shows no intent on the part of the prosecutor to bargain away a potential five-year prior, even by the relatively low-profile method of consolidating cases. Next, the record shows that the cases never lost their distinctiveness. Up to the day of the change of plea, separate counsel represented appellant in the two cases. At the beginning of the change of plea, the public defender declared a conflict, and the court appointed the other counsel to represent appellant on both cases. The taking of the plea continued. Negotiations obviously having already been conducted, counsel assented to the plea bargain, which specified pleas in two cases. The magistrate, carefully specifying case numbers in each instance, took the pleas and certified the cases to the superior court. Still with separate case numbers, that court imposed separate sentences.

Finally, section 954 controls consolidation in criminal proceedings.[2] The court, in its discretion, may order consolidated accusatory pleadings charging, as here, "two or more different offenses of the same class of crimes or offenses." "Where the offenses are not related, then the question of joinder becomes a matter of judicial discretion." (*People* v. *Jerez* (1989) 208 Cal.App.3d 132, 137 [256 Cal.Rptr. 31].) As in *Jerez,* nobody moved the

---

[2] Section 954 provides, in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. . . ."

court to consolidate the two cases. "Thus, we cannot determine that a decision was ever made, or even considered, on the question of the consolidation of these two crimes for trial." (*Id.* at pp. 136-137.)

We reject the notion that calendaring and hearing more than one case per defendant per day results in "de facto" consolidation. Courts do not determine issues not presented by unrecorded nonrulings.

*Harris* teaches that the proceedings giving rise to separate priors must be "formally distinct." *Jerez* explains that cases that "could have been" consolidated, but which were not, are separate for section 667 purposes. *Lewis* explains that "[t]he 'separately brought and tried' limitation of section 667, subdivision (a) does not bar multiple enhancements where convictions are based upon unrelated counts of different accusatory pleadings. [Citations.]" (191 Cal.App.3d at p. 1301.)

In *Lewis*, the defendant was charged with two counts of rape in one information in 1977. He was found incompetent to stand trial, and was committed to Patton State Hospital. He left without permission in 1979. He was arrested in 1981 on assault and robbery charges. They were charged in a separate information. Lewis was again committed to a state hospital in 1981. Criminal proceedings were resumed in 1983. Pursuant to a plea bargain, he pled guilty in one case to two counts of forcible rape, and in the other case to one count of robbery. He received concurrent five-year sentences for each offense. The sentencing proceedings were held contemporaneously, but the cases were never consolidated.

In 1985, he was convicted of another forcible rape and burglary. The trial court enhanced his sentence by fifteen years for the prior two counts of rape and one count of robbery. On appeal, the court found that imposition of two section 667.6 violent sex-offense enhancements was proper because section 667.6 does not require that such convictions be based upon charges separately brought and tried. (*People* v. *Lewis, supra,* 191 Cal.App.3d at p. 1301.)

The court also rejected "the contention that the prior robbery conviction was not subject to enhancement under Penal Code section 667, subdivision (a) because appellant was sentenced contemporaneously, and served concurrent sentences for that offense, together with the two prior rape convictions. The robbery occurred nearly four years after the rape and became the subject of the same plea bargain only because appellant committed additional crimes while an escapee from the state hospital, requiring the filing of a new information. The 'separately brought and tried' limitation of section 667, subdivision (a) does not bar multiple enhancements where convictions

are based upon unrelated counts of different accusatory pleadings. [Citations.]" (*People* v. *Lewis, supra*, 191 Cal.App.3d at p. 1301.)

Here, also, appellant accepted a plea bargain involving "unrelated counts of different accusatory pleadings." The crimes became the subject of the same plea bargain only because appellant committed an additional burglary while he was out of custody after arraignment on the first charge. As in *Lewis*, the cases were never consolidated. They remained formally distinct from their inception through sentencing.

The court did not err in imposing sentence on both prior convictions.

### Ineffective Assistance of Counsel

Next, appellant contends that his counsel was ineffective for failing to move to consolidate the two burglaries pursuant to section 954.

■ To establish that counsel's assistance was ineffective, a defendant must show that counsel's performance " 'fell below an objective standard of reasonableness . . . under prevailing professional norms' " (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 216 [233 Cal.Rptr. 404, 729 P.2d 839], citations omitted), and that he was prejudiced. Prejudice generally requires a defendant to make an affirmative showing that absent counsel's errors, there is a reasonable probability of a more favorable outcome. (*Id.* at p. 218.)

"Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus. In habeas corpus proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of. [Citations.]" (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

Here, the record sheds no light on why trial counsel failed to move to consolidate. For appellant to sustain the first part of his burden, the record must show that this was not a matter of tactics or strategy which lawyers of ordinary training and skill in the criminal law would consider competent. (*People* v. *Zimmerman* (1980) 102 Cal.App.3d 647, 657 [161 Cal.Rptr. 669, 14 A.L.R.4th 214].) Appellant has not met his burden of proof of establishing that " 'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.]" (*People* v. *Ledesma, supra*, 43 Cal.3d at p. 216.)

## DISPOSITION

The judgment is affirmed.

Elia, J., concurred.

Agliano, P. J., concurred in the judgment only.

A petition for a rehearing was denied June 4, 1990, and appellant's petition for review by the Supreme Court was denied July 25, 1990.